UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RASHEEN D. FAIRLY,<br><br>　　　　Defendant. | No.  1:95-cr-05193-DAD<br><br>ORDER GRANTING DEFENDANT FAIRLY'S MOTION TO REDUCE SENTENCE UNDER § 404 OF THE FIRST STEP ACT<br><br>(Doc. No. 311) |

  Pending before the court is defendant Rasheen D. Fairly's motion to reduce his sentence pursuant to § 404 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). (Doc. No. 311.) For the reasons explained below, defendant's motion will be granted.

**BACKGROUND**

  On October 28, 1996, defendant Rasheen Fairly was sentenced in this court to a mandatory life sentence following his conviction of drug trafficking and related offenses. (Doc. No. 144.) Specifically, defendant was charged and convicted following a jury trial of: (i) conspiracy to possess with the intent to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1); (ii) possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and (iii) being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 911(g)(1). (Doc. No. 311-1 at 2.) Prior to his sentencing, the government filed a memorandum

pursuant to 21 U.S.C. § 851, providing notice to the court and the defense that it would seek enhanced penalties at sentencing based upon defendant's prior state court convictions for serious drug felonies. (Doc. No. 124.) On October 28, 1996, the then-assigned district judge sentenced defendant to a mandatory term of life imprisonment pursuant to § 841(b)(1)(A) based upon the finding that defendant had been previously convicted of two serious drug felonies and that the amount of cocaine base for which he was responsible in this case was 879.4 grams. (Doc. Nos. 143, 144.) Defendant's conviction and sentence was affirmed on appeal on January 8, 1998. *See United States v. Candler*, 133 F.3d 929 (9th Cir. 1998).

Since that time, defendant has filed numerous collateral attacks challenging the validity of his convictions and sentence. (*See* Doc. No. 284 at 2–4) (describing defendant's prior petitions brought under 28 U.S.C. §§ 2255 and 2241). For example, on July 6, 2012, defendant filed a "Petition Challenging the Validity of a Prior Conviction Pursuant to 21 U.S.C. § 851(c)(2) in Aid of All Writs Act Pursuant to 28 U.S.C. § 1651(a)." (Doc. No. 279.) The court construed that petition as defendant's fourth successive § 2255 motion and dismissed it for lack of jurisdiction. (Doc. No. 284.)

Defendant is now 53 years old and, to date, has served approximately 310 months (nearly 26 years) of his sentence—i.e., half of his life. (Doc. No. 311 at 1.) Accounting for the award of maximum good time credits, defendant has already served a 375-month sentence (over 30 years) of imprisonment.[1] (*Id.* at 10.)

Defendant filed the pending motion to reduce his sentence pursuant to § 404 of the First Step Act on October 30, 2020. (Doc. No. 311.) On December 3, 2020, the government filed its

---

[1] The court has adopted the parties' jointly made representation of defendant Fairly's time served. However, it is unclear to the court if the parties took into account the time in which defendant was detained prior to his trial and sentencing and whether the parties have estimated his earned good time credits with any degree of precision. (*See* Doc. No. 8.) Defendant appears to have been ordered detained on July 7, 1995. (*Id.*) Such time in pretrial custody would be credited toward his time served and, if so, it would appear that defendant may have already served nearly 325 months (27 years) of his sentence—not accounting for good time credits. Nonetheless, the granting of relief here is appropriate in any event, and thus this possible discrepancy does not impact this order. Accordingly, the court will continue to refer throughout this order to the time already served as agreed to by the parties.

2

1  opposition to that motion, and on January 11, 2021, defendant filed his reply thereto. (Doc. Nos.
2  317, 325.)

## LEGAL STANDARD

In 2010, Congress enacted the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010), "to reduce the disparate treatment of offenders who dealt crack cocaine compared to offenders who dealt powder cocaine." *United States v. Kelley*, 962 F.3d 470, 475 (9th Cir. 2020), *abrogated by Concepcion v. United States*, __U.S.__, 142 S. Ct. 2389 (2022). Section 2 of the Fair Sentencing Act amended 21 U.S.C. §§ 841(b)(1)(A)(iii) and 841 (b)(1)(B)(iii) by increasing the amounts of prohibited controlled substances required to trigger certain mandatory penalties. *Kelley*, 962 F.3d at 472. "These changes did not apply to offenders whose convictions became final before Congress enacted the Fair Sentencing Act." *Id.* Eight years after Congress passed the Fair Sentencing Act, Congress passed the First Step Act, in part to provide that certain provisions of the Fair Sentencing Act would apply retroactively. *See United States v. Neal*, No. 2:09-cr-00089-JAM-KJN, 2020 WL 4476718, at *1 (E.D. Cal. Aug. 4, 2020). In particular, "[s]ection 404 of the First Step Act addresses how the Fair Sentencing Act applies to offenders whose sentences were final before Congress enacted the Fair Sentencing Act." *Kelley*, 962 F.3d at 472. Section 404 of the First Step Act provides that "[a] court that imposed a sentence for a *covered offense* may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." Pub. L. No. 115-391, 132 Stat. 5222 § 404(b) (emphasis added). A covered offense is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010." *Id.* § 404(a). "In other words, the First Step Act permits a defendant who was sentenced for a crack cocaine offense to move the court 'to impose a reduced sentence as if' the First Step Act had been in effect at the time the defendant committed the offense, and it gives the district court discretion to do so." *Kelley*, 962 F.3d at 472.

/////

On June 27, 2022, the United States Supreme Court expanded the scope of factors district courts may consider in resentencing a defendant who was convicted and sentenced for a covered offense. Specifically, on that date the Supreme Court addressed the question of "whether a district court adjudicating a motion under the First Step Act may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion." *Conception v. United States*, \_\_U.S.\_\_, 142 S. Ct. 2389, 2396 (2022). The Supreme Court answered that question in the affirmative, noting that the text of the First Step Act "does not so much as hint that district courts are prohibited from considering evidence of rehabilitation, disciplinary infractions, or unrelated Guidelines changes." *Id.* at 2401–02, 2404 (holding that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act"). Put simply, district courts are not solely limited to the changes imposed by the Fair Sentencing Act in determining whether or to what extent to grant relief under the First Step Act. The Supreme Court emphasized in *Concepcion* that only two limitations on district courts' discretion appear in § 404(c): "A district court may not consider a First Step Act motion if the movant's sentence was already reduced under the Fair Sentencing Act or if the court considered and rejected a motion under the First Step Act." *Id.* The Court instructed that "when deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments." *Id.* However, the Court also noted that a district court is not "required to articulate anything more than a brief statement of reasons." *Id.* (citing *Rita v. United States*, 551 U.S. 338, 356 (2007)).

**ANALYSIS**

**A.     Whether Defendant's Conviction Qualifies as a Covered Offense**

Before determining whether a defendant's sentence should be reduced pursuant to the Fair Sentencing Act and the First Step Act, courts must first determine whether the defendant's conviction qualifies as a covered offense under the Fair Sentencing Act. *See United States v. Alvarez-Contreras*, No. 2:14-cr-00238-JAM, 2021 WL 1022845, at *1 (E.D. Cal. Mar. 17, 2021). As noted, a "covered offense" "means a violation of a Federal criminal statute, the statutory

4

penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 that was committed before August 3, 2010." Pub. L. No. 115-391, 132 Stat. 5222 § 404(a). Relevant here, § 2 of the Fair Sentencing Act modified the statutory penalties for violations involving crack cocaine (otherwise known as cocaine base). *See Alvarez-Contreras* 2021 WL 1022845, at *2.

Defendant Fairly's conviction qualifies as a "covered offense" because he was convicted of conspiracy to possess with intent to distribute cocaine base and possession with intent to distribute cocaine base. (Doc. No. 311-1 at 2–3.) Moreover, the sentence imposed as to those offenses of conviction was determined in part based on 21 U.S.C. § 841(b)(1)(A)(iii), which was also amended by § 2 of the Fair Sentencing Act. *See* Pub. L. No. 111-220, 124 Stat. 2372 (2010). Thus, it is undisputed by the parties in this case that in sentencing defendant Fairly in 1996, the court imposed a sentence for a *covered offense*. (Doc. Nos. 311 at 5; 317 at 9.) Accordingly, defendant is eligible for a sentence reduction pursuant to the First Step Act and the Fair Sentencing Act.

**B.      Whether a Sentence Reduction Is Appropriate in this Action**

While defendant Fairly is eligible for a reduction of his sentence, it is of course entirely within the court's discretion whether to grant him such relief. *See Concepcion*, 142 S. Ct. at 2404; *see also* Pub. L. No. 115-391, 132 Stat. 5222 § 404(c) ("[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section"). In exercising this discretion, courts consider the familiar sentencing factors set forth in 18 U.S.C. § 3553(a), which include the applicable advisory Sentencing Guidelines range, as well as all other pertinent information regarding the offender's history and conduct. *See United States v. Johnson*, 26 F.4th 726, 736 (6th Cir. 2022) (quoting *Holguin-Hernandez v. United States*, __U.S.__, 140 S. Ct. 762, 766–67 (2020)); *see also United States v. Houston*, No. 20-10043, 2022 WL 3097369, at *1 (9th Cir. Aug. 1, 2022)[2] ("*Concepcion* requires the district court to consider the 18 U.S.C. § 3553(a) factors in the first instance when deciding whether relevant changes in law or fact raised by a party justify a reduced sentence under the First Step Act[.]"). In addition, courts may consider a

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

5

defendant's post-offense conduct, either positive or negative, in assessing whether to adjust a previously imposed sentence. *Pepper v. United States*, 562 U.S. 476 (2011).

Although defendant Fairly in 1996 was sentenced to life in prison in this case, nothing in the record before the court affirmatively suggests that the sentencing judge would have imposed a life term of imprisonment had such a sentence not then been mandatory. Indeed, the transcript of Fairly's sentencing hearing reflects that the sentencing judge did not engage in a thorough analysis of the factors normally to be taken into account in determining the sentence to be imposed *because* imposing a life sentence was mandatory at that time. (*See* Doc. No. 322-1 at 5) ("In other words, you understand that under the law I have to—it's mandatory that I give you a life sentence because this is your third drug conviction?"). The court will now exercise its discretion to resentence defendant Fairly and consider the § 3553(a) factors, including defendant's post-conviction behavior.

Section 3553(a) instructs courts to "impose a sentence sufficient, but not greater than necessary" and to consider several factors including "the nature and circumstances of the offense and the history and characteristics of the defendant"; the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). When considering and balancing the § 3553(a) factors, "evidence of postsentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.'" *Pepper*, 562 U.S. at 491 (quoting 18 U.S.C. § 3553(a)(1)). Moreover, as the Supreme Court has recently reminded, district courts must consider "intervening changes of . . . fact" when "exercising their discretion to reduce a sentence pursuant to the First Step Act." *Concepcion*, 142 S. Ct. at 2404.

  1. <u>Defendant Fairly Would No Longer be Subject to a Mandatory Sentence Under the U.S. Sentencing Guidelines</u>

As an initial matter, the court recognizes that the Sentencing Guideline range applicable to defendant Fairly has not been altered as a result of the changes implemented by the First Step Act and the Fair Sentencing Act. In the Guidelines scoring section of the presentence investigation

report ("PSR"), the probation officer found that defendant Fairly qualified as a career offender under U.S.S.G. § 4B1.1(b).[3] (PSR at ¶ 24.) As such, his base offense level was 37 and his criminal history category was VI. (*Id.*) The resulting Guideline range was therefore 360 months to life. (*Id.* at 13.) Defendant's status as a career offender has not changed as a result of either the Fair Sentencing Act or the First Step Act, and thus defendant Fairly's advisory sentencing guideline range still calls for imposition of a term of imprisonment between 360 months to life, in line with U.S.S.G. § 4B1.1(b). However, imposition of a sentence between 360 months to life would no longer be *mandated* because the Sentencing Guidelines are no longer mandatory. *See United States v. Booker*, 543 U.S. 220 (2005) (declaring the Guidelines advisory).

2. <u>Defendant Would No Longer be Subject to a Statutory Mandatory Life Sentence</u>

The version of 21 U.S.C. § 841(a) in effect at the time of defendant's sentencing provided that any person charged with violating that statute involving 50 grams or more of a substance that contained cocaine base would, upon conviction, be sentenced according to § 841(b)(1)(A). *See* 21 U.S.C. § 841(b)(1)(A) (1996). Under § 841(b)(1)(A), a defendant who had also suffered two prior serious drug felony convictions was subject to a mandatory term of life imprisonment. *Id.* At the time of defendant's sentencing for his violations of § 841(a)(1), he had suffered two or more prior convictions for serious drug felonies and the PSR concluded that defendant was responsible for 879.4 grams of cocaine base in connection with his conviction before this court. (PSR at 2a.) Accordingly, defendant Fairly in 1996 was sentenced to a mandatory life term of imprisonment. (Doc. No. 144.)

However, the First Step Act amended § 841(b)(1)(A) and reduced the penalty from a mandatory life sentence to a mandatory minimum term of imprisonment of 25 years up to a maximum of life imprisonment for those who had two prior serious drug or violent felony convictions. Pub. L. 115–391, 132 Stat. at 5220 § 401(a)(2)(A)(ii) (codified at 21 U.S.C. § 841(b)(1)(A)). Additionally, the First Step Act raised the minimum amount of cocaine base

---

[3] At the time of defendant's sentencing, presentence reports ("PSR") were not filed on the CM/ECF public docket and defendant's presentence report in this case does not appear on the public docket. The undersigned has obtained a copy of the PSR from the U.S. Probation Office and has relied in part upon that document for this background and the additional analysis below.

7

necessary to trigger the § 841(b)(1)(A) punishments from 50 grams to 280 grams.  Thus, to summarize, under the current version of § 841(b)(1)(A), a defendant (such as defendant Fairly) convicted of possessing over 280 grams of cocaine base with two or more prior convictions for serious drug felonies would be subject to a term of imprisonment of not less than 25 years.  *See* 21 U.S.C. § 841(b)(1)(A)(iii).  Here, the court will assume that defendant's violation involved more than 280 grams of cocaine base because that is what the sentencing judge in this action determined in adopting the findings set forth in defendant's PSR.  (*See* Doc. No. 322-1 at 6) (sentencing judge adopting the findings of the PSR and concluding that defendant is "also responsible for the crack cocaine that was found in his apartment, which was 879.4 grams.").[4] Although defendant Fairly's offenses of conviction involved over 280 grams of cocaine base, if sentenced for his same convictions today, he would still not be subject to a mandatory sentence of life imprisonment.  Instead, he would only be subject to a mandatory minimum 25-year sentence and a maximum sentence of life imprisonment, and the sentencing judge would have the discretion to impose a term of imprisonment within that range.  The undersigned will now exercise that discretion after considering the relevant sentencing factors.

/////

/////

---

[4] At the time defendant Fairly was convicted and sentenced, the jury at his trial was not required to make a specific finding as to the quantities of drugs involved in his offense of conviction in order for him to be sentenced under 21 U.S.C. § 841(b)(1)(A).  *See United States v. Ware*, 964 F.3d 482, 488 (6th Cir. 2020).  It was not until the Supreme Court's *Apprendi* decision in 2000—four years after defendant Fairly was convicted and sentenced—that the rule changed requiring that any fact that increases the penalty for a crime beyond a prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt.  *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  The new rule announced in *Apprendi* did not apply retroactively.  *See Ware*, 964 F.3d at 488.  However, because the source of the *Apprendi* rule is "the Constitution itself, . . . the underlying right necessarily pre-exists [the Supreme Court's] articulation" of it, and a defendant's Sixth Amendment rights may nevertheless be violated when a sentence enhancement is applied based on judge-found facts.  *Id.* (quoting *Danforth v. Minnesota*, 552 U.S. 264, 271 (2008)).  Therefore, the court here may consider "the impact that *Apprendi* would have had" on the defendant's statutory sentencing range as "a factor" in determining whether to exercise its discretion to grant relief for which "Congress has made [him] eligible."  *Id.*  This weighing is properly conducted as part of the § 3553(a) analysis.  *United States v. Maxwell*, 991 F.3d 685, 691 (6th Cir. 2021).  Ultimately, however, for the reasons articulated throughout this order, the court concludes that plaintiff's motion to reduce his sentence pursuant to § 404 of the First Step Act should be granted regardless of any impact that the decision in *Apprendi* has on this case.

### 3. Applying the § 3553(a) Factors

Considering the § 3553(a) factors and the facts of defendant Fairly's post-conviction rehabilitation, as detailed below, the court concludes that defendant's sentence should be reduced to one of time served, given that he has already served nearly 26 years (310 months), or over 30 years (375 months) when accounting for good time credits.[5] (Doc. No. 311 at 1, 10.)

Two points in particular persuade the court that consideration of the § 3553(a) factors favor reducing defendant Fairly's sentence. First, § 3553(a) instructs courts to consider the sentencing range for "the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines," 18 U.S.C. § 3553(a)(4), as well as "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* § 3553(a)(6). As explained above, if defendant were sentenced in 1996 under the law as it exists today by a court considering the § 3553(a) factors, then he would almost certainly in the undersigned's view have received a sentence of less than life imprisonment, given that the applicable mandatory minimum sentence would be 25 years. Second, although defendant Fairly has suffered prior serious drug convictions in addition to his conviction in this case, he has never been convicted of a violent crime and has amassed an exemplary prison disciplinary record. (Doc. No. 325 at 11–12.) Consideration of these factors weighs in favor of reducing defendant's sentence and provides this court with a reason to believe that, with supervision, defendant Fairly no longer poses a serious danger to the community. *See United States v. Price*, 496 F. Supp. 3d 83, 90–91 (D.D.C. 2020) (reducing a life sentence because "the life sentence that Mr. Price is serving was required by statute, based on the offense of convictions and his prior convictions; it did not reflect this Court's judgment that Mr. Price posed a danger to the public."); *see also Report to the Congress; Career Offender Sentencing Enhancements*, U.S. Sent'g Comm'n 3 (Aug. 2016), available at *https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/criminal-history/201607_RtC-Career-Offenders.pdf* ("Drug trafficking only career offenders are not

---

[5] *See* fn. 1, above.

meaningfully different from other federal drug trafficking offenders and should not categorically be subject to the significant increases in penalties required by the career offender directive.").

The U.S. Sentencing Commission's "Report to Congress on Career Offender Sentencing Enhancements" goes on to state that "it would be appropriate to restructure the statutory directive and the resulting career offender guideline to distinguish those offenders who are sentenced based solely on an instant drug trafficking offense and two drug trafficking predicates." *Id.* at 27. That is precisely the category of defendant that Mr. Fairly falls into. That Report further concluded that at the time of its publication, only 26.7% of career offenders were labeled as such based solely on their drug trafficking convictions. *Id.* at 28. Furthermore, the average sentences imposed on those drug-trafficking-only convictions were notably lower that those imposed on violent offenders. For example, the sentences for offenders in the drug-trafficking-only category were found to be on average 32.7% lower than the low end of their respective sentencing guideline range. *Id.* at 34. In contrast, those offenders convicted of only violent prior offenses on average received sentences that were only 9.9% lower than the low end of the sentencing guideline range. *Id.* This data plainly supports the conclusion that when sentencing is discretionary and not mandatory, sentencing judges sentence drug-trafficking-only career offenders less severely than they do career offenders who have been convicted of serious crimes of violence. "This data may suggest that courts, and increasingly the government, view the career offender enhancement as overly severe for this group of career offenders, and that, instead, a sentence that is consistent with other non-career offender drug trafficking offenders is more appropriate." *Id.* at 35.

Here, the low end of the advisory sentencing guideline range in defendant Fairly's case was and remains 360 months. If the court were to impose a sentence consistent with the 32.7% below the low end of the guidelines range that drug-trafficking-only career offenders on average receive, defendant Fairly would have been sentenced to closer to 245 months in prison, not to a

/////

/////

/////

10

term of life imprisonment.[6] As noted, to date, defendant has already served nearly 26 years (310 months), or over 30 years (375 months) accounting for good time credits. (Doc. No. 311 at 10.)

Next, as to defendant's behavior since his conviction, defendant Fairly has won awards for industriousness, worked in the UNICOR cable factory, earned outstanding work performance ratings in the prison laundry department, and completed numerous courses in carpentry, automotive repair, and blueprint reading. (Doc. No. 311 at 9; 311-9 at 2–4.) He has achieved all of this while imprisoned despite his self-proclaimed hopelessness in light of the previously imposed sentence of life imprisonment.[7] (Doc. No. 311 at 9.) Further, defendant was a young man when he was sentenced by this court over a quarter-century ago and at the age of 53 has now spent the majority of his life in federal prison. (*Id.* at 1.) In all of that time, defendant has only suffered two prison disciplinary actions—one for a refusal to work and one for fighting. (Doc. No. 311 at 9; 311-12 at 2.) Defendant Fairly contends that the sanction imposed upon him for fighting resulted from circumstances where, although he "is unaffiliated and steadfastly tried to avoid prison gangs," he was nonetheless "jumped" by three gang members. (Doc. No. 325 at 12.) With respect to the sanction imposed due to his refusal to work, defendant Fairly explains that "[s]ixteen years ago, he declined to rake a yard because of his allergies, for which he lost 30 days commissary." (*Id.*) These two incidents over the course of his entire 26-years of actual imprisonment do not demonstrate that defendant poses a threat to his community.

The court also acknowledges that defendant Fairly has presented a reasonable plan for re-entering the community were he to be released under supervision. Defendant expresses that many members of his family are ready to help him and that he has two employment offers waiting for him. (*Id.* at 10.) Specifically, immediately upon release from custody, defendant proposes that

---

[6] The government appears to recognize that without reference to the career offender guideline, "Fairly's Criminal History Category is V and resulting Guidelines range would be 235 to 293 months." (Doc. No. 317 at 12) (citing PSR at ¶ 24).

[7] The court also recognizes that defendant was apparently addicted to crack cocaine between the ages of 15 to 19 and had almost no contact with his father. (PSR at ¶¶ 26–33.) Nonetheless, prior to his conviction in this case, defendant had graduated from Edison High School in Fresno, California and had even attended Community College for over a semester.

11

1    he would live with his grandmother, who has offered her home for defendant to live in.  (Doc.
2    No. 311-13 at 2.)  Defendant's grandmother lives in a 5-bedroom home in the northwest section
3    of Fresno.[8]  (*Id.*)  Although his grandmother "is a strong, independent woman who can take care
4    of herself, she is 84 years old" and defendant Fairly has expressed that he "looks forward to being
5    there for her, should she want any help at this stage of her life."  (*Id.*)  With regard to
6    employment, defendant represents that he has a job offer to work at Crystal Clear Solar Cleaners
7    and he has attached a sworn declaration establishing this employment opportunity that is available
8    to him.  (*Id.* at 3.)  In this regard, defendant's son Deon Fairly currently works at Crystal Clear
9    Solar Cleaners as a foreman and has secured an offer of employment on his father's behalf.  (*Id.*
10   at 7.)  Alternatively, defendant Fairly also has a job offer to work in a janitorial/landscaping
11   position at Burrus Financial.  (*Id.* at 3.)  Mr. Burrus, owner of the Burrus Financial Building, has
12   likewise submitted a declaration stating that he would hire defendant Fairly.  (*Id.* at 6.)  Lastly, it
13   is reported that defendant's first cousin has offered to help him financially upon his release from
14   prison and that defendant "has a very large, loving family that will be ready to provide emotional
15   and moral support to Mr. Fairly should his motion for sentence reduction be granted."  (*Id.* at 4.)
16   Against this extensive backdrop, the court does not find the government's argument that
17   defendant's "post-sentence conduct does not justify a sentence reduction, given the seriousness of
18   the offenses, his criminal history, and history of violent conduct" to be persuasive.  (Doc. No. 317
19   at 17.)

20          To be sure, defendant's prior criminal history is concerning to the court, and his offenses
21   of conviction in this case are certainly quite serious.  But that history demonstrates only that
22   defendant's crimes called for the imposition of serious punishment.  The over 30-year sentence
23   that defendant has served fits that description and adequately reflects the seriousness of his
24   offenses of conviction.  The court's conclusion that defendant has served an adequate amount of
25   time in prison and that his conviction is directly in line with the types of convictions targeted by
26   the First Step Act and Fair Sentencing Act is supported by numerous other decisions in which

---

[8] As an alternative housing option, defendant's first cousin has offered that defendant Fairly could reside at her home.  (Doc. No. 311-13 at 2.)

district judges across the country have reached the same conclusion in similar cases. *See, e.g.*, *Greenhow v. United States*, No. 4:95-cr-39(3), 2020 WL 5539045, at *5 (E.D. Va. Sept. 15, 2020) ("Based on all of the § 3553(a) factors and . . . Petitioner's evidence of rehabilitation since the original sentence . . ., the Court finds a sentence of Time Served is sufficient but not greater than necessary to serve the purpose of the sentencing."); *United States v. Stone*, 416 F. Supp. 3d 721, 732 (M.D. Tenn. 2019) (reducing the previously mandatory life sentence, in the case of a defendant who had suffered two prior felony drug convictions, to a sentence of 360 months, which the court found "better reflects Defendant's serious criminal history and better promotes the objectives set forth in 18 U.S.C. § 3553(a)(2)(A)"); *United States v. Johnson*, 4:92-cr-4013-WS-CAS, 2019 WL 7496780, at *3 (N.D. Fla. Oct. 31, 2019) (reducing a life sentence to one of time served after the defendant had served twenty-seven years in prison and had received only two prison disciplinary incident reports during that lengthy time of incarceration); *United States v. Barber*, 409 F. Supp. 3d 542, 549 (W.D. Va. 2019) (reducing a life sentence to one of time served after finding that the defendant's "history as a young man and his behavior while in prison, his age, the amount of time he has served, his family support, and his desire to work in the food industry upon release all suggest that he be given a time served sentence."). Finally, the undersigned observes that many district courts in the Ninth Circuit have recognized the injustice stemming from the imposition of extremely long sentences in drug trafficking cases resulting from the disparity in sentencing between crack cocaine and cocaine cases, leading those courts to grant compassionate release to prisoners pursuant to 18 U.S.C. § 3582(c) based on extraordinary and compelling reasons stemming from the nature of their sentences. *See, e.g.*, *United States v. Blanco*, No. 93-cr-20040-2-CW, 2020 WL 7350414, at *6 (N.D. Cal. Dec. 14, 2020); *United States v. Barrenechea*, No. 92-cr-00403-MMC-3, 2020 WL 2315638, at *1 (N.D. Cal. May 7, 2020); *United States v. McGee*, No. 12-cr-00052-EMC-1, 2021 WL 1660251, at *1 (N.D. Cal. Apr. 26, 2021). While applicable to a different kind of motion (compassionate release instead of a First Step Act motion), the reasoning of the district courts in those cases also supports the undersigned's conclusion that the granting of relief in this case is clearly appropriate.

/////

13

**CONCLUSION**

For the reasons set forth above,

1. Defendant's motion to reduce his sentence pursuant to § 404 of the First Step Act (Doc. No. 311) is granted;

2. The sentence previously imposed of a life term of imprisonment is reduced to a sentence of time-served;

3. Defendant's previously imposed 120-month term of supervised release shall remain in full force and effect;

4. The conditions of defendant's previously imposed 120-month term of supervised release are amended as follows:

   a. While on supervised release, defendant must not commit another federal, state, or local crime and shall not illegally possess controlled substances. Defendant shall cooperate in the collection of DNA as directed by the probation officer and shall comply with the standard conditions which have been recommended by the United States Sentencing Commission and adopted by this court. Further, defendant must refrain from any unlawful use of a controlled substance. Defendant must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed four (4) drug tests per month;

   b. Special Conditions:

      i. Defendant must submit his person, property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer or any law enforcement officer at any time, based upon reasonable suspicion of unlawful conduct or a violation of a condition of supervision, without a search warrant. Failure to submit to a search may be grounds for revocation. Defendant must warn any other occupants that the

premises may be subject to searches pursuant to this condition;

 ii. Defendant must not use or possess any controlled substances without a valid prescription. If defendant has a valid prescription, he must disclose the prescription information to the probation officer and follow the instructions on the prescription;

 iii. Defendant must participate in an outpatient substance abuse/alcohol abuse treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise his participation in the program;

 iv. Defendant must submit to substance abuse/alcohol abuse testing to determine if he has used a prohibited substance. Defendant must not attempt to obstruct or tamper with the testing methods;

 v. Defendant must participate in a co-payment plan for treatment, testing and/or medication and shall make payment directly to the vendor under contract with the United States Probation Office. Defendant's co-payment will be determined utilizing a Sliding Fee Scale based upon his disposable income;

 vi. Defendant must provide the probation officer with access to any requested financial information and authorize the release of any financial information. The probation office may share financial information with the U.S. Attorney's Office;

 vii. Defendant must be employed and/or complete community service for a combination of 30 hours per week or participate in a previously approved educational or vocational program by the probation officer. The probation officer will supervise the participation in the community service program by approving the program (agency, location, frequency of participation, etc.). Defendant must provide written verification of completed

           community service hours to the probation officer;

    c.    Standard Conditions of Supervision:

        i.    Defendant must report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs him to report to a different probation office or within a different time frame;

        ii.    After initially reporting to the probation office, defendant will receive instructions from the court or the probation officer about how and when he must report to the probation officer, and he must report to the probation officer as instructed;

        iii.    Defendant must not knowingly leave the federal judicial district where he is authorized to reside without first getting permission from the court or the probation officer;

        iv.    Defendant must answer truthfully the questions asked by the probation officer;

        v.    Defendant must live at a place approved by the probation office.  If defendant plans to change where he lives or anything about his living arrangements (such as the people he lives with), he must notify the probation officer at least 10 days before the change.  If notifying the probation officer in advance is not possible due to unanticipated circumstances, defendant must notify the probation officer within 72 hours of becoming aware of a change or expected change;

        vi.    Defendant must allow the probation officer to visit him at any time at his home or elsewhere, and defendant must permit the probation officer to take any items prohibited by the conditions of his supervision that the probation officer observes in plain view;

        vii.        Defendant must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses him from doing so. If defendant does not have full-time employment, he must try to find full-time employment, unless the probation officer excuses him from doing so. If defendant plans to change where he works or anything about his work (such as his position or his job responsibilities), he must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, defendant must notify the probation officer within 72 hours of becoming aware of a change or expected change;

        viii.        Defendant must not communicate or interact with someone he knows is engaged in criminal activity. If defendant knows someone has been convicted of a felony, he must not knowingly communicate or interact with that person without first getting the permission of the probation officer;

        ix.        If defendant is arrested or questioned by a law enforcement officer, he must notify the probation officer within 72 hours;

        x.        Defendant must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers);

        xi.        Defendant must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court;

/////

   xii. If the probation officer determines that defendant poses a risk to another person (including an organization), the probation officer may require defendant to notify the person about the risk and defendant must comply with that instruction.  The probation officer may contact the person and confirm that defendant has notified the person about the risk; and

   xiii. Defendant must follow the instructions of the probation officer related to the conditions of supervision;

5. Defendant's *pro se* motion brought pursuant to 21 U.S.C. § 851(c)(2) and his motion for leave to proceed *in forma pauperis* in connection with that petition are both denied as having been rendered moot by this order (Doc. Nos. 307, 308).

IT IS SO ORDERED.

Dated: **September 1, 2022**    /s/ Dale A. Drozd
                UNITED STATES DISTRICT JUDGE